IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EMMANUEL ODIAH,

                Petitioner,                OPINION AND ORDER

    v.

                                                      21-cv-174-wmc
                                                      19-cr-081-wmc

UNITED STATES OF AMERICA,

                Respondent.

---

Proceeding *pro se*, petitioner Emmanuel Odiah filed a motion to vacate his criminal judgment under 28 U.S.C. § 2255, asking that the court reduce his sentence to one between 30 and 37 months, resentence him altogether or allow him to appeal, claiming that his guilty plea and sentence are defective due to his attorney's ineffectiveness. Odiah further asks that the court appoint him counsel for purposes of this motion. (Dkt. #5.) Having reviewed Odiah's thorough briefing[1] and the government's detailed opposition, as well as recalling the details of Odiah's guilty plea and sentence, the court finds that recruitment of counsel is unnecessary. Moreover, since Odiah has fallen far short of meeting the demanding standard to show ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668 (1994), his underlying motion to undo his criminal conviction and sentence will also be denied without a hearing.

---

[1] The court further grants Odiah's motion to extend his reply brief deadline (*see* dkt. #8), as well as his motion to amend his reply brief (dkt. #12), which it has considered in its amended form for purposes of this opinion and order.

BACKGROUND[2]

**A. Charges and plea hearing**

On January 15, 2020, Emmanuel Odiah pleaded guilty to one charge of conspiracy to commit concealment of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) & (h), having been charged with laundering money for a network of individuals in Nigeria and Ghana who were perpetrating various computer-based fraud schemes on victims located throughout the United States, including romance fraud. Odiah's role in their schemes was largely limited to helping to collect, conceal and redirect moneys received from victims using bank accounts he maintained under two, fake identities in the United States. More specifically, Odiah opened and maintained seven, U.S. bank accounts, using fraudulent passports in the names of "James Princeton" and "Ryan Greg Mornson." Between 2017 and 2019, more than $600,000 of ill-gotten gains were deposited into those accounts. After depositing, Odiah would then pose as Princeton or Mornson and use a series of smaller transactions to distribute the proceeds overseas to those perpetrating the fraudulent schemes.

During the plea hearing before this court, Odiah was placed under oath and affirmed his ability to understand the proceedings, as well as that he and his counsel had sufficient time to discuss the charges lodged against him, the facts the government believed it could prove at trial, the statutory penalties involved and how the federal sentencing guidelines could impact his sentence. The court then asked Odiah specific questions about the

---

[2] The court refers to docket entries from the underlying criminal proceeding as "CR."

charges he was facing, and Odiah acknowledged that he was charged with "a type of money laundering." Following up, the court asked:

> in particular you understand that you're being charged with knowingly and intentionally conspiring with others to conduct financial transactions – fraudulent transactions online, and then your role is to move that money from specific accounts that you created into other accounts defrauding the individuals?

(CR, dkt. #70, at 5.) Odiah also agreed with that statement. Next, the court confirmed Odiah's understanding that the probation office would first calculate the federal sentencing guidelines, factoring in the number of points attributed to his offense, his relevant conduct, which would include the amount of money involved in the transactions in which he participated, the fact that he pleaded guilty, his role in the offense, his criminal history and any other factor that office deemed relevant. The court also explained that the government and Odiah's counsel would have the chance to object to the probation office's calculation, but that the court would ultimately be responsible for determining the advisory guideline range that would apply at sentencing. Odiah further indicated he understood that while this would be the process, the court was free to impose a sentence above or below the guideline range if it believed that would better serve the purpose of sentencing.

The court next asked Odiah several questions about whether he expected a particular sentence, and Odiah testified that no one had made him a promise beyond what was in the plea agreement, that no one had told him that the court would impose a sentence other than the 20 years or less, and that in entering a plea of guilty, he did not know what his sentence would be. (*Id.* at 12-13.) Finally, Odiah admitted that the government would be able to prove the following facts:

3

- Odiah participated in a conspiracy to launder wire fraud proceeds;

- Odiah's role in the conspiracy was limited to the movement of fraud proceeds;

- Odiah helped collect, conceal and redirect the money using domestic bank accounts he maintained under two, fake identities in the United States;

- Odiah kept a portion of the fraudulent proceeds as a fee;

- Odiah opened bank accounts using fraudulent Nigerian and UK passports;

- bank records from May 3, 2017, and March 11, 2019, showed that wire fraud victims in the United States deposited or wire transferred money into Odiah's bank accounts created under false names;

- the victims did not know their money was going to Odiah but rather believed it was going to one of Odiah's fake identities;

- after a victim's money was deposited into one of those accounts, Odiah posed as one of the fake identities to convert those deposits to cash or money orders.

(*Id.* at 13-16.)

### B. Presentence Report, Objections and Sentencing

Following Odiah's plea of guilty, the Probation Office prepared a presentence report ("PSR"), calculating the loss attributable to his crime at $626,925.96. In arriving at the advisory guideline range, the PSR began with U.S.S.G. § 2S1.1, the applicable guideline for a money laundering offense under 18 U.S.C. § 1956(h). The PSR next noted that the base offense level under § 2S1.1 for money laundering was also the total offense level for the underlying offense, without consideration of any Chapter Three enhancements. (PSR (dkt. #28) ¶ 70.) Therefore, the PSR turned to the total offense level for the underlying

offense of wire fraud found at § 2B1.1 for a base offense level of 7. Then, the PSR made the following enhancements under the guidelines: +14 levels for the amount of the loss under U.S.S.G. § 2B1.1(b)(1)(H); +4 levels for the number of victims under § 2B1.1(b)(2)(B)); and +2 levels because the defendant used a false passport during the offense under § 2B1.1(b)(11)(C)(i). Accordingly, the resulting total offense level for the underlying offense was 27, to which the PSR next added two levels for money laundering under U.S.S.G. § 2S1.1(b)(2)(B), resulting in a total offense level of 29, before a three-level reduction for acceptance of responsibility.

On May 13, 2020, defense counsel challenged the PSR on three grounds on Odiah's behalf. First, counsel objected to the 4-level enhancement for having five or more victims, arguing that the number was not a reasonably foreseeable number to Odiah. Second, counsel challenged the 2-level enhancement for use of a false passport as excessive. Third, counsel challenged the total loss amount based on his belief that some of the funds that went into the account were not the product of the underlying fraud, although this latter objection did not specify which transactions or amounts he believed were for other purposes.

The next day, defense counsel also filed a second letter, raising another objection to the 2-level enhancement, arguing that because the false passports did not belong to actual (as opposed to fictional) individuals, the enhancement did not apply. The probation office and government agreed to this fourth objection, reducing the offense level to 27 before subtracting 3 levels and resulting in an advisory guideline range of 51 to 63 months.

Before sentencing, defense counsel filed a sentencing memorandum, which asked for a variance from this guideline range for several reasons. In particular, counsel pointed out that: (1) Odiah was a comparatively minor player in larger fraudulent schemes; (2) Odiah's role was limited to laundering *and* not to interact with the victims; (3) Odiah made a relatively small amount of money from his laundering activities; and (4) Odiah's immigration status would limit his ability to take advantage of early release programs, since he would be deported after serving his sentence. Odiah sent a letter to the court as well, apologizing for his conduct.

On May 20, 2020, the court sentenced Odiah. Before imposing sentence, the court: (1) overruled Odiah's late objection as to calculation of the loss figure in the presentence report, having failed to do it timely; and (2) overruled his objection to the 2-level increase for money laundering on the ground that he did not have contact with victims, since the Application Note does not include the requirement that a defendant have direct contact with a victim. (CR, dkt. #60, at 5-6.) As a result, the court accepted the applicable total offense level to be 27, and after applying a three-level downward adjustment for Odiah's acceptable of responsibility, ultimately agreed that the advisory guideline imprisonment range was 51 to 63 months. The court also noted Odiah's less significant role in the offense, as well as his inevitable deportation, while observing that "it's hard to discount the severity of the defendant's conduct and the cynical nature of it, [as well as] the harm done to the victims," especially given the lenient nature of advisory guidelines for white collar crimes. (CR, dkt. #71, at 6). Nevertheless, the court ultimately imposed a sentence near the bottom of the guideline range at 53 months.

On October 26, 2020, Odiah filed a *pro se* letter, seeking to appeal. Although his deadline to appeal was some five months past due, that letter was docketed as a Notice of Appeal. After the Court of Appeals for the Seventh Circuit permitted Odiah's trial counsel to withdraw, his appellate counsel filed a jurisdictional memorandum conceding that defendant's notice of appeal was untimely and the government would not waive its objection on that basis. On January 29, 2021, the Seventh Circuit dismissed Odiah's direct appeal as untimely. Odiah filed the present motion on March 12, 2021, and supplemented that motion on May 17, 2021.

OPINION

Odiah is challenging his conviction and sentence on the ground that his counsel was ineffective in several respects. Generally speaking, however, a § 2255 motion cannot raise: (1) issues that were raised and decided on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). However, an ineffective assistance of counsel claim may generally be brought in a § 2255 motion regardless of whether that claim was raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Still, Odiah has not shown, and the record does not support, entitlement to relief under the demanding standard set forth in *Strickland*, 466 U.S. 668.

Under *Strickland*, a petitioner must demonstrate *both* a constitutionally deficient performance by counsel *and* actual prejudice as a result of that deficiency. *Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). In order for a defendant who has entered into a guilty plea to demonstrate deficient performance in particular, he must show that his lawyer's advice regarding entry of his guilty plea was objectively unreasonable. *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) (citing *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003)). Further, to meet the prejudice prong in the context of a guilty plea, the petitioner must further show that there is a reasonable probability that *but for* counsel's deficient performance, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003).

With respect to sentencing only, the petitioner must also show that an attorney's error resulted in a longer sentence. *See Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) (failure to object to error in the court's guidelines calculation constituted deficient performance). In particular, the petitioner must show that there is a reasonable probability that he would have received a lighter sentence *but for* counsel's alleged errors. *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010).

Odiah maintains that because his attorney performed deficiently both with respect to the plea agreement proceedings *and* his sentencing, the court should either reduce his sentence to a range of 30-37 months, vacate his sentence, or permit him to appeal. However, as a threshold matter, § 2255 does not authorize this court to reduce a sentence *or* reinstate a right to appeal; the statute only permits the court to *vacate* a sentence.

8

Therefore, a reduction or reinstated appeal is not available. Neither will this court vacate his sentence, since Odiah cannot show that his counsel performed deficiently, much less that there was a likelihood he would have proceeded to trial or received a lower sentence, absent any claimed deficiency.

### I. Plea Proceedings

Odiah's challenges to the plea negotiations themselves are vague and unavailing. He asserts that his attorney promised him an advisory guidelines range based on a certain loss amount, and that he only entered into the plea agreement because his counsel agreed to challenge the loss amount. Setting aside the inconsistency between these two arguments, neither the plea agreement nor Odiah's sworn statements during the plea hearing support such a finding. Moreover, Odiah provided no basis to infer he was prejudiced by these alleged missteps.

To start, the plea agreement letter filed with the court made no mention of an applicable guideline range. (CR, dkt. #23.) Then, during the plea hearing, the court engaged at length with Odiah about whether he was promised a certain sentence or sentence within the guideline range, ensuring in particular that Odiah only understood that he was going to get a sentence of 20 years or less, and that he had no reason to believe what his sentence might be other than within that broad range. Odiah's bald assertion now that his attorney had actually promised him a sentence within a certain range based on loss amount is simply insufficient evidence, by itself, to overcome the strong presumption that Odiah's sworn statements during the plea hearing itself were true. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants

contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.").

Even accepting that his counsel did make such an assurance, having been mistaken about whether and what guideline range may apply, Odiah represents that he *also* had discussions with his trial counsel about the offense level, the loss amount enhancement and acceptance of responsibility point reductions. Even if ultimately flawed in substance, having this type of in-depth discussion does not suggest that his attorney failed to "undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *See Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). In any event, even Odiah states that his attorney apologized to him after seeing the calculations in the PSR, but then assured him that he would object and ask for downward departures, which his counsel not only did, but was successful in one respect. Even accepting that Odiah's counsel made certain incorrect assumptions about the sentencing calculation, therefore, the court sees no basis to infer that his counsel performed in an objectively unreasonable fashion when he discussed the terms of the plea agreement with his client.

Finally, even assuming for the sake of argument that Odiah's counsel failed to conduct a good faith analysis before telling Odiah that he would be subject to a 30-37 month guideline range *and* in promising to challenge the loss amount, Odiah has made no effort to confront the prejudice prong of the *Strickland* analysis. Odiah has not explained in any detail what reasonable basis he would have had to take his chances at trial, had his attorney pressed for the 30-37 month guideline range or pressed a different loss amount

10

calculation. Nor could he on this record. Rather, at the plea hearing, Odiah readily acknowledge that the government would be able to prove beyond a reasonable doubt that: he participated in the conspiracy to laundry wire fraud proceeds by opening bank accounts using fraudulent Nigerian and UK passports; wire fraud victims deposited or wire transferred money into those accounts between May 3, 2017, and March 11, 2019; the victims did not know they were sending money to Odiah, and instead believed they were sending money to the fake identities Odiah had created; and Odiah posed using one of his fake identifies to convert the deposits in those accounts to cash or money orders. In the face of these damning admissions, Odiah has forfeited *any* reason for the court to infer now that he would have taken his chances at trial, had his counsel not promised him a certain guidelines range or explicitly challenged the loss amount. Accordingly, Odiah's first ineffective assistance of counsel claim fails.

## II.   Sentencing

Odiah also claims that his trial counsel was ineffective at sentencing itself, arguing that he failed to: (1) effectively challenge the loss amount; (2) clearly explain Odiah's limited role in the offense; and (3) challenge the applicable guideline calculations.

*First,* as to the loss amount, Odiah claims that he repeatedly urged his counsel to challenge that amount in specific terms because he felt that it did not accurately reflect his involvement. Even now, however, Odiah has still not provided specifics on this point, representing *only* that he calculated a different loss amount of $491,391.12 (*see* dkt. #1 at 26), and that he believed the probation officer included losses occurring *before* his May 2017 involvement in the scheme. Odiah further claims that he tried to review the bank

11

statements with his attorney to point out amounts that were not part of the scheme (or erroneous duplicate entries), but does not delve deeper to support his claims. Moreover, Odiah is incorrect about the amounts included in the loss amount, which were limited to the funds in *just the accounts he created using fake names and identities*, leaving little to no room for argument as to his involvement.

To prove deficient performance, Odiah would have to show that his "attorney's representation amount[ed] to incompetence under prevailing professional norms." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (citation omitted). He has simply not made that showing on this record. Indeed, as the government points out, Odiah appears to fail to appreciate the strategies driving his counsel's decision not to object to the specific loss amount: (1) Odiah has no basis to challenge any of the monetary entries of deposits into his account using different pseudonyms, as *not* being part of the scheme; and (2) even if Odiah could raise specific challenges, a formal objection would have jeopardized his downward departure for acceptance of responsibility. Although it may be reasonable to infer that Odiah's counsel did not explain these potential downsides to challenging the loss amount as calculated in the PSR, such an omission does not suggest deficient performance either.

*Second*, Odiah claims his counsel failed to explain to the court his limited role in the fraud scheme, but that is simply untrue. Odiah's counsel objected to the 2-level enhancement for money laundering, as well as the 4-level enhancement related to the number of victims, arguing (as Odiah says he should have) that the conduct was not foreseeable. (*See* dkt. #29.) That the court *overruled* these objections is hardly a basis to

conclude his counsel's performance is deficient. On the contrary, Odiah does not even explain how his counsel should have pursued these objections differently. Instead, he merely argues vaguely that he cannot be held accountable for conduct prior to his involvement in the scheme, which was not included in the relevant conduct or loss amount anyway.

Significantly, Odiah does not acknowledge his counsel's successful objection to the 2-level enhancement for the use of a fake passport, which lowered Odiah's advisory guideline range. Odiah also acknowledges his counsel's mention of the total loss amount, as noted above, but he still has not provided sufficient specificity about *how* his counsel should have challenged the loss amount or how the benefit of that challenge would have outweighed the loss of acceptance of responsibility.

*Third*, Odiah maintains that the guidelines range was incorrect because the probation office and court applied the wrong guideline, and his attorney failed to correct that error. Although the government explains in detail its position that Odiah is simply incorrect, since Odiah's sentence was well-below the maximum statutory sentence, any error committed or overlooked in calculating the applicable guideline range is not a basis for collateral relief. Indeed, in *Hawkins v. United States*, 724 F.3d 915 (7th Cir. 2013), the court of appeals reaffirmed its previous holding in *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013), that "an error in calculating a defendant's guidelines sentencing range does not justify post-conviction relief unless the defendant [was] sentenced in the pre-*Booker* era, when the guidelines were mandatory rather than merely advisory." *Id*. at 916; *see also*

*United States v. Coleman*, 763 F.3d 706, 708–09 (7th Cir. 2014) (recognizing that *Hawkins* is "the law of this circuit").

Specifically, Odiah was sentenced in 2020, some 15 years after the Supreme Court held that the guidelines are advisory in *United States v. Booker*, 543 U.S. 220 (2005). The maximum term of imprisonment for violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h) is 20 years' imprisonment; Odiah's 54-month term of imprisonment was well under the statutory maximum, and indeed near the bottom of his guideline range. Thus, *Hawkins* applies, and any challenge to how his counsel handled the guidelines calculation is foreclosed.

### III. Post-Sentence Performance

Odiah separately claims that he did not pursue an appeal because he understood his term of incarceration would be too short to initiate an appeal. Odiah faults his counsel for this as well, asserting that he had initially believed he was to be imprisoned for just *five* months because his attorney failed to send him copies of the court's judgment within a reasonable timeframe. (*See* dkt. #1, at 19.) However, the record at sentencing belies Odiah's assertion. In particular, before the court imposed the sentence during the May 20, 2020, videoconference sentencing hearing, it noted that Odiah would likely serve the entirety of his sentence, rather than benefit from an early release program. (CR (dkt. #71) 6.) Moreover, the court was explicit in imposing Odiah's sentence:

> As to the one-count superseding indictment, it is adjudged that the defendant is committed to the custody of the Bureau of Prisons for a term of 54 months. In this case, the defendant Odiah will likely be deported upon completion of his prison term. If so, any term of supervised release will be inactive . . . ."

14

(CR, dkt. #71, at 25-26.)

Odiah does not explain how he could have misinterpreted this straightforward language, nor does he disclose some inability to understand his counsel's or the court's statements. Similarly, Odiah has not otherwise explained how his counsel was responsible for his claimed misunderstanding, or more broadly, how his counsel prevented him from pursuing an appeal. Odiah also does not even represent that he asked his attorney to assist him with an appeal until several months later. Accordingly, there is also no basis to infer that Odiah's counsel performed deficiently with respect to preserving Odiah's right to appeal.

## IV. Restitution Amount

Finally, Odiah appears to challenge the amount of the court's restitution order. However, such a challenge is not cognizable under § 2255, since the challenge would not impact Odiah's custody. *See Barnickel v. United States*, 113 F.3d 704 (7th Cir. 1997). This is true even if Odiah frames his challenge as an ineffective assistance claim: "if the restitution order must be changed . . . that change would involve altering the terms or amounts of payments and cannot be accomplished via a cause of action based upon 'the right to be released.'" *Zambonino v. United States*, No. 03-cv-04676, 2006 WL 2861957, at *3 (N.D. Ill. Sept. 29, 2006) (quoting § 2255). Accordingly, the court sees no basis to infer that Odiah's conviction or sentence suffers from a constitutional defect, and this motion will be denied.

Under Rule 11 of the Rules Governing Section 2254 Cases (which can be applied to cases under § 2255), the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because Odiah has not made a substantial showing of a denial of a constitutional right, no certificate will issue.

## ORDER

IT IS ORDERED that:

(1) Emmanuel Odiah's motion to vacate pursuant to 28 U.S.C. § 2255 (dkt. #1) is DENIED and he petition is DISMISSED.

(2) Odiah's motion to appoint counsel (dkt. #5) is DENIED.

(3) Odiah's motions to extend and to amend brief (dkt. #8, 12) are GRANTED.

(4) A certificate of appealability will not issue.

Entered this 12th day of April, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge